## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELORES HOLMES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 09-0424 |
| | : | |
| MANN BRACKEN, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                    **DECEMBER  22, 2009**

Presently before this Court is a Motion for Summary Judgment filed by Defendant Mann

Bracken, LLC ("Mann Bracken") against Plaintiff Delores Holmes ("Holmes").  For the reasons

set forth below, the Motion is denied.

## I.    BACKGROUND

Holmes brings this case as a class action against the debt collection law firm Mann

Bracken.  Holmes, individually and on behalf of all other Pennsylvania consumers similarly

situated,[1] seeks statutory damages and other relief against Mann Bracken for deceptive and unfair

debt collection practices under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692f

(the "FDCPA").

Holmes applied on-line for a Chase Bank VISA Credit Card through a special

arrangement with Amazon.com.  (Holmes Dep. 36:7-14.)  Chase approved her credit application

and mailed Holmes a credit card along with the written terms and conditions that applied to

---

[1]Holmes asserts that the potential class numbers more than 4400 Pennsylvania
consumers.

Holmes's use of the card ("Cardholder Agreement").  (Id. at 37:13-18.)

Holmes used her credit card to make consumer purchases, but stopped making payments

on her account because she believed that Chase improperly increased her interest rate.[2]  When

Holmes defaulted on her credit card debt,[3] Chase hired Mann Bracken to initiate arbitration

---

[2]Holmes stated at her deposition that:

> A.  Okay.  Well, basically what happened was I've had a credit card with Chase and I always lived up to all the terms, and what happened was my daughter was getting married in September of 2007 and I had other credit cards, and in order to pay for the wedding -- to help pay for the wedding I used my credit cards to pay for some items for her and because I ran up my credit cards Chase turned around and doubled my interest rate.
>
> Q.  You say doubled your interest rate?
>
> A.  Yes.
>
> Q.  Can you state what it was before it was doubled?
>
> A.  It was about 14, 15 percent, somewhere in that area, and then they doubled it to 29.9.

(Def.'s Mot. Summ. J., Ex. 1 at 10:4-19.)

[3]Holmes further testified at her deposition:

> Q.  In paragraph 11 you state that you refused to pay what you term outlandish and extortionate payments levied by Chase.  Did you refuse to pay just the increase in the interest on the entire amount on the account?
>
> A.  I refused to pay them anything.
>
> Q.  Can you explain why you would refuse to pay the charges that did not include what you've termed to be the outlandish and extortionate amounts?
>
> A.  Because it wouldn't have mattered.  If I would have paid them

proceedings against her and to collect the debt.

Mann Bracken filed a complaint against Holmes in the National Arbitration Forum ("NAF"). Mann Bracken then forwarded an arbitration demand along with a collection letter to Holmes telling her to pay her debt or answer the notice, or else risk a binding default judgment against her, which could be reduced to a judgment.[4] (Def.'s Mot. Summ. J., Ex. 4.) Holmes avers that Mann Bracken violated the FDCPA's prohibition on using false, misleading and/or deceptive statements in connection with the collection of a consumer debt by serving her with an arbitration claim on September 11, 2008. Holmes claims that this notice falsely represented that if Holmes failed to respond to the arbitration notice, any subsequent award entered against her would be binding and subject to judicial enforcement. (Compl. ¶¶ 12, 20, 21, 34.)

The basis of Holmes's claim that the notice of arbitration is deceptive and in violation of the FDCPA is as follows: Holmes asserts that in 2005, in response to a "tsunami of default arbitration awards entered against consumers," the Supreme Court of Pennsylvania amended the

---

> what I was already paying them, that amount, they would have just
> went ahead and ruined my credit anyway because I wasn't paying
> them what they wanted. It wouldn't have satisfied them.

(Def.'s Mot. Summ. J., Ex. 1 at 15:5-21.)

[4]This notice states:

> RESPONDENT(S): THIS IS AN ARBITRATION CLAIM
> AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU
> HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT
> WITH A WRITTEN RESPONSE. IF YOU DO NOT SERVE
> THE CLAIMANT AND FILE WITH THE NATIONAL
> ARBITRATION FORUM A WRITTEN RESPONSE, AN
> AWARD MAY BE ENTERED AGAINST YOU.

(Def.'s Mot. Summ. J., Ex. 4.)

Pennsylvania Rules of Civil Procedure to create a specific section governing arbitration of consumer credit transactions. Pa.R.C.P. 1326-31 (effective Feb. 1, 2006) (the "Amended Rules"). Among other things, the Amended Rules specifically ban the practice of seeking to confirm default arbitration awards entered without participation by the consumer or involvement of a judicial officer. Holmes states that under these Amended Rules, debt collectors are no longer permitted to unilaterally obtain and seek to confirm default arbitration awards against Pennsylvania consumers. Instead, if a consumer is notified that a collector demands arbitration, the consumer can either appear and participate, or waive in writing. See Pa.R.C.P. 1327.[5] If the consumer does neither, the debt collector is required to first file a civil action compelling an arbitration before, rather than after, the arbitration occurs. See Pa.R.C.P. 1329(a)(1).[6] If the defendant fails to file a responsive pleading, the plaintiff may obtain a default judgment. Pa.R.C.P. 1329(b). Whereas, if the defendant answers and opposes arbitration, the motion to compel arbitration shall be decided pursuant to the court's procedures for deciding motions. If

---

[5]Pennsylvania Rule of Civil Procedure 1327 states:

> Any party may file a motion to confirm an arbitration award which was entered by an arbitrator only if
> (1) the party against whom an arbitration award is sought to be confirmed either
> > (i) attended a hearing before an arbitrator, or
> > (ii) signed a writing after the claim that is the basis for the arbitration award that was filed with the arbitrator agreeing to submit the claim to the arbitrator, or
> (2) the arbitration award was entered following a court order or docket entry staying proceedings pending arbitration as provided by Rule 1329.

Pa.R.C.P. 1327.

[6]This Section states in relevant part: "A plaintiff seeking to compel arbitration of a claim shall commence a civil action against the defendant." Pa.R.C.P. 1329(a)(1).

the court grants the motion, the court shall enter an order compelling the parties to proceed with arbitration and staying court proceedings pending arbitration. Pa.R.C.P. 1329(d)(4).

In the instant case, Holmes argues that the arbitration notice that was sent to her is deceptive under the FDCPA because it fails to inform her of her arbitration rights pursuant to the Amended Rules, and that the Amended Rules apply to her as a Pennsylvania consumer and to the others in the potential class. Holmes claims that the arbitration notice is deceptive under the Amended Rules because Mann Bracken would not be able to compel an arbitration and/or enforce an arbitration award by NAF in the Pennsylvania Court of Common Pleas without having to first file a civil action in that court. See Pa.R.C.P. 1329(a)(1). Below, we will first address the issue of whether the Amended Rules govern the instant situation, and then address the issue of whether the arbitration notice is deceptive under the FDCPA.

## II.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Hines v. Consol. Rail Corp.</u>, 926 F.2d 262, 267 (3d Cir. 1991). The court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must

be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"

Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

## III.   DISCUSSION

### 1. Introduction

We first note that it is undisputed in this matter that the parties specifically agreed in the Cardholder Agreement[7] that the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA") would

---

[7]The Cardholder Agreement states in pertinent part:

> **ARBITRATION AGREEMENT.** PLEASE READ THIS
> AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE
> MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION
> REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE
> ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE
> ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN
> A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN

govern any arbitration, and the laws of Delaware[8] would apply where applicable. Given these

facts, it is important to first understand why Mann Bracken would have no alternative but to seek

to enforce an arbitration award in this case, as well as in cases involving other Pennsylvania

resident debtors, in a Pennsylvania court rather than in a Delaware state court or here in federal

court.

---

THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND
WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY
TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY,
AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CLASS
FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND
OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT
YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS
DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE
MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW,
THOSE RIGHTS ARE WAIVED.

**Binding Arbitration**. This Arbitration Agreement is made
pursuant to a transaction involving interstate commerce, and shall
be governed by and be enforceable under the Federal Arbitration
Act (the "FAA"), 9 U.S.C. § 1-16 as it may be amended. This
Arbitration Agreement sets forth the circumstances and procedures
under which claims (as defined below) may be resolved by
arbitration instead of being litigated in court.

(Def.'s Mot. Summ. J., Ex. 2 at 3.)

[8]The choice of law provision in the Cardholder Agreement states as follows:

THE TERMS AND ENFORCEMENT OF THIS AGREEMENT
AND YOUR ACCOUNT SHALL BE GOVERNED AND
INTERPRETED IN ACCORDANCE WITH FEDERAL LAW
AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF
DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW
PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND
THE ACCOUNT ARE LOCATED, WILL APPLY NO MATTER
WHERE YOU LIVE OR USE THE ACCOUNT.

(Def.'s Mot. Summ. J., Ex. 2, at 4.)

In attempting to enforce an arbitration award decided by NAF against Holmes under this Cardholder Agreement, Mann Bracken faced a quandary. If the arbitration award was more than seventy-five thousand dollars ($75,000), Mann Bracken could file an action in federal court to enforce an award because the Cardholder Agreement clearly states that the FAA governs. Federal jurisdiction would be satisfied by both the amount in controversy and diversity of citizenship. The Federal Rules of Civil Procedure would, of course, govern in this situation along with any applicable FAA provisions.[9] In addition, a federal court would apply Delaware substantive law if necessary, as the parties had agreed to do. Thus, in that situation, the Amended Rules would clearly not control.

However, in this case, since the debt Holmes owed Chase is less than $75,000, there is no federal jurisdiction as the FAA does not provide an independent basis for federal jurisdiction.[10] The United States Supreme Court stated in <u>Vaden v. Discover Bank</u> that the FAA is "something of an anomaly in the realm of federal legislation: It bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis over the parties'

---

[9] 9 U.S.C. § 4 provides in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty, of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in the agreement.

9 U.S.C. § 4.

[10] Of course, the large majority of credit card consumer debt arbitration awards will involve sums less than $75,000.

dispute." 129 S. Ct. 1262, 1271-72 (2009); <u>see also</u> <u>Hall St. Assocs., LLC v. Mattel, Inc.</u>, 552 U.S. 576 (2008).

Here, because there is no diversity-based federal jurisdiction as the amount in controversy is not satisfied, Mann Bracken would have no choice but to attempt to enforce an arbitration award in either Delaware state court or Pennsylvania state court. It is, however, highly unlikely that Delaware's long-arm statute would be able to secure jurisdiction over Holmes because she is a Pennsylvania resident. In addition, Mann Bracken does not argue that Delaware has jurisdiction.[11] Consequently, Mann Bracken's only option would be to seek jurisdiction in Pennsylvania to enforce an arbitration award against Holmes. Mann Bracken, however, has chosen not to do so with regards to Holmes's debt or the debts of the other potential class members, apparently foreseeing that the Amended Rules conflicted with its arbitration notices to the Pennsylvania debtors. Consequently, the issue of whether the Amended Rules apply in a case where the parties agreed that the FAA governs, but there is no federal jurisdiction, has not been decided by the Pennsylvania courts, nor has it been addressed in this Court. Thus, we will first address this novel issue, and then decide whether there is a genuine issue of material fact as to whether the arbitration notice that Mann Bracken sent to Holmes could be deemed "deceptive" under the FDCPA.

### 2. Pennsylvania Uniform Arbitration Act and Pennsylvania Common Law

Mann Bracken first asserts that the Amended Rules do not govern the instant situation

---

[11]In fact, Mann Bracken acknowledges that Pennsylvania would be the only court that would have jurisdiction over Holmes to enforce an arbitration award.

because Pennsylvania Rule of Civil Procedure 1326[12] limits the application of the Amended

Rules to arbitrations conducted under either the Pennsylvania Uniform Arbitration Act

("PUAA"), 42 Pa. C. S. § 3701, et seq., or to common law arbitration as defined in 42 Pa. C. S.

§7431, et seq.  Mann Bracken argues that the Cardholder Agreement specifically provides for

arbitration pursuant to the FAA, and thus, the PUAA would not apply.  Mann Bracken further

asserts that because the Cardholder Agreement did not specify that it was governed by the

PUAA, the only basis upon which the Amended Rules could govern is if the arbitration is

deemed to be one under Pennsylvania's common law statute.  (Def.'s Mot. Summ. J. at 8.)

      "In order for an agreement to arbitrate to fall within the Uniform Arbitration Act, two

---

[12]Pennsylvania Rule of Civil Procedure 1326 states:

(a) As used in this chapter,

"Arbitration" means statutory arbitration pursuant to Section 7301 et seq. of the Judicial Code, 42 Pa.C.S. § 7301 et seq., known as the Uniform Arbitration Act, or common law arbitration pursuant to Section 7341 et seq. Of the Judicial Code, 42 Pa.C.S. § 7341 et seq;

"arbitrator" includes a board of arbitrators;

"consumer credit transaction" means a credit transaction in which the party to whom credit is offered or extended is a natural person and the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes.

(b) The rules of this chapter shall govern proceedings to compel arbitration and confirm an arbitration award entered in a claim arising from a consumer credit transaction.

Pa.R.C.P. 1326.

requirements must be met: first, the agreement must be in writing; and second, the agreement must expressly provide for arbitration under the Act." Midomo Co., Inc. v. Presbyterian Hous. Dev., 739 A.2d 180, 183 (Pa. Super. Ct. 1999); see also Dearry v. Aetna Life & Cas. Ins. Co., 610 A.2d 469, 471 (Pa. 1992).

Here, it is clear that the Cardholder Agreement here did not expressly provide for arbitration under the PUAA. Thus, we look at whether Pennsylvania would apply the Amended Rules in the instant situation under its common law statute. Mann Bracken simply argues that where the parties agree to be governed by the FAA, the Amended Rules would not fall under Pennsylvania's common law arbitration statute.

On its surface, this argument has much appeal as Amended Rule 1326 does not state in its definition of arbitration section that the Amended Rules apply to arbitrations that are governed by the FAA, but brought before a Pennsylvania court for enforcement of an award. We first note that it is obvious that if Mann Bracken was to attempt to enforce an arbitration award against Holmes in a Pennsylvania court, some rules of civil procedure would need to govern. Mann Bracken only suggests that Pennsylvania would be obligated to follow the Delaware Rules of Civil Procedure because the parties agreed that Delaware law would control. Mann Bracken, however, offers no case law to support such an argument, nor have we found any support for Pennsylvania applying Delaware's, or any other state's Rules of Civil Procedure in enforcing an arbitration award in its courts. Moreover, Mann Bracken has not asserted that any other Pennsylvania Rule(s) of Civil Procedure would govern the enforcement of an arbitration award in this situation.

We next note that Pennsylvania Rules of Civil Procedure 1301 through 1314 govern

compulsory arbitrations that take place in a court of common pleas. There are, however, no other

Pennsylvania Rules of Civil Procedure that could govern here, other than the Amended Rules. In

addition, our research indicates that only Pennsylvania statute, 42 Pa.C.S.A. § 7342(b), addresses

the confirmation of an arbitration award in its courts. This section states:

> (b) Confirmation and judgment.--On application of a party made more
> than 30 days after an award is made by an arbitrator under section 7341
> (relating to common law arbitration) the court shall enter an order
> confirming the award and shall enter a judgment or decree in conformity
> with the order. Section 7302(d)(2) (relating to special application) shall
> not be applicable to proceedings under this subchapter.

42 Pa.C.S.A. § 7342(b). As this section reads, a Pennsylvania court would confirm an arbitration

award and enter judgment made by an arbitrator only under Pennsylvania's common law statute.

Consequently, because there are no other procedural rules that could govern an enforcement of an

arbitration award, we opine that the Pennsylvania courts would consider the instant situation as

being governed by its common law statute, and thus, would meet its definition of arbitration in

Amended Rule 1326(a). Accordingly, we reject Mann Bracken's argument that this matter

would not fall under the definition of arbitration as defined in Rule 1326(a), and conclude that

the Amended Rules would govern here if Mann Bracken attempted to enforce an arbitration

award against Holmes in a Pennsylvania court.

### 3. Preemption

Mann Bracken next argues that even if the Amended Rules did apply here, they would be

preempted by the FAA because they construct a procedural obstacle to a creditor seeking to

initiate arbitration without court intervention.

Originally passed in 1925, the FAA was enacted to "revers[e] centuries of judicial

hostility to arbitration agreements by plac[ing] arbitration agreements upon the same footing as other contracts." Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1113 (3d Cir. 1993). The FAA makes agreements to arbitrate enforceable to the same extent as other contracts. Seus v. Nuveen & Co., 146 F.3d 175, 178 (3d Cir. 1998). Thus, federal law presumptively favors the enforcement of arbitration agreements. In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 231 (3d Cir. 1998). The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000). Further, the FAA "directs courts towards vigorous enforcement of arbitration, requiring that an arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Id.

Mann Bracken asserts that by conferring primary jurisdiction over consumer credit arbitrations to a judicial body rather than the arbitrator, the Amended Rules conflict with, and are therefore preempted by, the FAA. To support this position, Mann Bracken cites Preston v. Ferrer, 552 U.S. 346 (2008). In Preston, the Supreme Court considered whether the California Labor Commissioner could, consistent with the FAA, determine that a contract which contained an arbitration provision was invalid and unenforceable under the California Talent Agencies Act, over which the Labor Commissioner had primary jurisdiction. The Court held that "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." 552 U.S. at 349.

We, however, find that the Amended Rules are not preempted by the FAA. It must first

be noted that the "FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." <u>Volt Info. Scis. Inc. v. Bd of Trs</u>, 489 U.S. 468, 477 (1989). Moreover, the Supreme Court recently stated that "given the substantive supremacy of the FAA, but the Act's nonjurisdictional cast, state courts have a prominent role to play as enforcers of agreements to arbitrate." <u>Vaden</u>, 129 S. Ct. at 1271-72.

<u>Volt</u> held that federal law preempts conflicting state law only "to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" 489 U.S. at 477 (citing <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941)). <u>Volt</u> further determined that "there is no federal policy favoring arbitration under a certain set of procedural rules." <u>Id.</u> at 476. Thus, under this rationale, so long as state procedural rules do not substantially interfere with enforcement of an agreement to arbitrate, the FAA does not preempt.

The Pennsylvania Supreme Court addressed this issue in <u>Moscatiello v. Hilliard</u>, 939 A.2d 325 (Pa. 2007). In that case, appellants invested in a mutual fund managed by appellees. The parties signed an agreement containing an arbitration clause and a choice of law provision. The arbitration clause stated that any disputes would be settled in arbitration under National Association of Securities Dealers ("NASD") rules, which the FAA governs. The choice of law provision stated that Pennsylvania law would govern. <u>Id.</u> at 326. After losing substantial money in the mutual fund, appellants filed multiple claims with the NASD against appellees including fraud and violations of the Pennsylvania Unfair Trade Practice. A NASD arbitration panel dismissed all claims and appellants filed a petition to vacate. The trial court dismissed the petition as untimely, holding Pennsylvania's thirty-day time limit for challenging arbitration awards was not preempted by the three-month FAA time limit in 9 U.S.C. § 12. <u>Id.</u>

The Pennsylvania Supreme Court, in relying on Volt, determined that because Pennsylvania's Uniform Arbitration Act and its common law arbitration act provide for the enforcement of arbitration of contract and other disputes, they foster the federal policy favoring arbitration enforcement. The court concluded that the thirty-day time limit found in both Pennsylvania arbitration acts do not undermine this policy or the FAA's goal, and thus, the FAA does not preempt the procedural rules governing arbitration in the Pennsylvania state courts. Id. at 329-30; see also Joseph v. Advest, Inc., 906 A.2d 1205 (Pa. Super. Ct. 2006) (holding that Pennsylvania's procedural rule providing for a thirty-day rather than a three-month time limit for challenging arbitration awards does not conflict with the FAA's purpose of encouraging arbitration of matters to expedite litigation; rather, it reinforces that goal by more quickly rendering arbitration awards final).

Likewise, in the instant case, we conclude that the Amended Rules are not preempted by any provision(s) of the FAA. We find that these Rules do not stand as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. Volt, 489 U.S. at 477.

Holmes asserts that the procedures set forth in the Amended Rules[13] do not interfere with

---

[13]The Explanatory Comment of 2005 to the Amended Rules states in relevant part:

> These new rules create procedures that minimize court involvement and provide quicker and cheaper relief to litigants. The rules are promulgated in response to the inclusion of an arbitration clause governing collection claims in consumer credit transactions.
>
> There is no reason for a claim to be heard by an arbitrator pursuant to a motion to compel arbitration if the defendant will not be

the parties' agreement to arbitrate because they are "consistent with, not repugnant to, the FAA." (Def.'s Resp. Summ. J. at 7.)  In fact, Holmes maintains that the Pennsylvania procedure mirrors the procedure in the federal courts under the FAA.  We agree.  Indeed, if a party were to apply to a federal court to compel an arbitration in a situation where the respondent did not voluntarily assent, the movant would invoke 9 U.S.C. § 4.[14]  Under that statute, the district court would appoint an arbitrator or direct arbitration consistent with the parties' agreement.  As already noted, the Amended Rules, like the Federal Rules, require a creditor to first file an action in court in order to compel arbitration and/or enforce an award.  Accordingly, we find that the Amended Rules are not an "obstacle" to the objective of Congress in enacting the FAA, and thus, they are not preempted by the FAA.  See Volt, 489 U.S. at 477.

### 4. Least Sophisticated Debtor Standard

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt

---

> contesting the claim of the plaintiff.  Thus, (1) new Rule 1329(a) provides for the plaintiff seeking to compel arbitration of a claim to commence a civil action against the defendant and to include in the complaint an allegation that the claims raised in the complaint are subject to an agreement to submit these claims to arbitration and (2) new Rule 1329(b) permits the plaintiff to obtain a default judgment pursuant to Rules 237.1 and 1037 if defendant fails to file a responsive pleading to the complaint.
>
> If the defendant files an answer to the complaint admitting that the claims are subject to arbitration, new Rule 1329(c)(1) permits either party to file a praecipe directing the prothonotary to enter on the docket a stay of proceedings pending arbitration.

Pa.R.C.P. 1326-31 cmt. (2005).

[14]See supra note 9.

collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA provides a [statutory] remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Piper v. Portnoff Law Assoc., Ltd., 396 F.3d 227, 232 (3d Cir. 2005). The FDCPA is a remedial statute, and courts are to construe its language broadly to effect its purposes. Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006).

The FDCPA, in relevant part, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[15] More specifically, it prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692(e)(9). Lastly, the FDCPA provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

---

[15]This section states in part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney. . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692(e).

We now move on to the question of whether the notice sent to Holmes was "deceptive" under the FDCPA. This Court must analyze the notice under the "least sophisticated debtor" standard to determine whether it can reasonably be read as false, deceptive or misleading, or as unfair or unconscionable. Brown, 464 F.3d at 453. This standard ensures that "all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious," are protected by the statute. Id. at 454. "The least sophisticated debtor standard protects naive consumers, [but] it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Id. Brown further held that a communication is "deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." Id. at 455. In Brown, a debt collector sent a collection letter which stated that legal action could be taken against the debtor. The Third Circuit, applying the least sophisticated debtor standard, found it to be a deceptive practice for a collection agency to mention in a letter that an account could be forwarded to an attorney when the agency had never or very rarely done so before. 464 F.3d at 451-52.

More recently, in Rosenau v. Unifund Corp., the Third Circuit applied the least sophisticated debtor standard where a debt collection letter had expressly stated "[t]his communication is from a debt collector. This is an attempt to collect a debt . . . ," and where the letter closed with, in place of a signature, "Unifund Legal Department." 539 F.3d 218 (3d Cir. 2008). The court found the letter to falsely imply that it was from an attorney and stated that the letter from the collection company's "legal department," which in fact employed no attorneys, could be interpreted as meaning that attorneys had played a role in writing or sending the letter.

18

The court stated that this letter qualified as misleading under the FDCPA's "false representation or implication that . . . a communication is from an attorney" provision.  Id. at 224.

With regard to the instant communication sent to Holmes, under the least sophisticated debtor standard, we look at whether the letter "can be reasonably read to have two or more different meanings, one of which is inaccurate."  464 F.3d at 455.  We find that it can, and that there is a genuine issue of material fact as to whether the communication is deceptive.  Here, Mann Bracken was fully aware that Pennsylvania promulgated the Amended Rules in 2005, and that such Rules could potentially affect how it collects debts involving Pennsylvania residents.  Yet, Mann Bracken sent out this communication which did not include the arbitration rights which the Amended Rules provide.  Mann Bracken acknowledges in its Motion that it consulted with its attorneys after the Pennsylvania Rules were amended, and that it initially decided to follow the procedures laid out in the Amended Rules and stop direct filings with the NAF.  Mann Bracken asserts that after the United States Supreme Court rendered its decision in Preston in 2008, the matter was again discussed with counsel and a decision was made to resume filing actions directly with the NAF without the constructs of the Amended Rules.  (Def.'s Mot. Summ. J. at 16.)

Mann Bracken argues that its reliance on Preston excuses any potential liability on its part under the FDCPA's bona fide error defense.  "To qualify for the bona fide error defense under the Fair Debt Collection Practices Act, a defendant's alleged violation of the Act must have been 'unintentional' and must have 'resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.'"  15 U.S.C. § 1692(k)(c).  Accordingly, to avail itself of the defense, Mann Bracken will have to establish: "(1)  the alleged violation was

19

unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide

error occurred despite procedures designed to avoid such errors." <u>Beck v. Maximus, Inc.</u>, 457

F.3d 291, 297-98 (3d Cir. 2006) (citing <u>Johnson v. Riddle</u>, 443 F.3d 723, 727-28 (10th Cir.

2006)).

When the underlying bona fide error involves a mistake of law, then "whether the debt

collector's mistake was bona fide will often turn on the debt collector's due diligence practices."

<u>Richburg v. Palisades Collection LLC</u>, 247 F.R.D. 457, 467 (E.D. Pa. 2008) (citing <u>Johnson</u>, 443

F.3d at 725).[16]  Here, as discussed above, the <u>Preston</u> decision certainly did not definitively

decide the issue of whether the Amended Rules are preempted by the FAA.  In fact, as discussed

above, after reviewing the relevant case law, we concluded that there is no preemption.  It is

apparent that Mann Bracken sent out the communication to Holmes and the others in the

potential class knowing that this issue had not been definitely resolved.  In fact, as also noted

earlier, Mann Bracken has not attempted to enforce an arbitration award against Holmes or any

of its other Pennsylvania debtors in the Pennsylvania courts.[17]  Mann Bracken, thus, sent the

communication to Holmes knowing that its contents could be "deceptive" because such

communication could have "two or more different meanings, one of which is inaccurate."

<u>Brown</u>, 464 F.3d at 455.

Mann Bracken argues that "the undisputed evidence shows that [its] lawyers made a

---

[16]<u>Richburg</u> also noted that the bona fide error defense is a "narrow" one.  247 F.R.D. at
467.

[17]Such lack of action on Mann Bracken's behalf raises the question: if Mann Bracken was
so sure that the <u>Preston</u> case preempted the Amended Rules, thus enabling it to directly enforce
an arbitration award without first filing a civil action in Pennsylvania, why has it not attempted to
do so?

reasoned judgment to commence filing arbitration [notices] in Pennsylvania after the Supreme Court's ruling in <u>Preston v. Ferrer</u>."  (Def.'s Mot. Summ. J. at 15.)  We, however, disagree that the existing record contains such "undisputed evidence" to conclusively meet the elements of the bona fide error defense.  Rather, we conclude that based on the present record, we cannot determine if Mann Bracken's error was "unintentional" and/or whether Mann Bracken employed "procedures designed to avoid such errors."  <u>Beck</u>, 457 F.3d at 297-98.  Accordingly, we cannot grant summary judgment to Mann Bracken, and must leave this issue for resolution before a jury.

An appropriate Order follows.